IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Maurice Dunbar, ) | |
| Plaintiff, ) | Civil Action No.2:11-cv-2243-JFA-BHH |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Director SCDC Bill Byars; SCDC; and ) | |
| Head Officials *of daily operations and* ) | |
| *procedures in SCDC–State*, ) | |
| Defendants. ) | |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"). (Dkt. No. 1 at 1 of 4.) This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 28.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about August 21, 2011. (Dkt. No. 1.) On April 26, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 28.) By order filed April 27, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 29.) Plaintiff filed several documents opposing Defendants' motion. (See Dkt. No. 31; Dkt. No. 32; Dkt. No. 34.)

## PROCEDURAL FACTS

Plaintiff, who is currently housed at Allendale Correctional Institution, alleges claims pursuant to the Rehabilitation Act and the Americans with Disabilities Act. (See Dkt. No. 1 at 1 of 4.) Plaintiff alleges that he is "disabled" under the ADA, as he has Type 1 insulin-

dependent diabetes. (Dkt. No. 1 at 1-2 of 4.) According to Plaintiff, the South Carolina Department of Corrections ("SCDC") "continued to deny [him] from [his] duties and punish[ him] for [his] disabilities, such as denied from working in kitchen, road crew, work release or moved to yard suitable to [his] custody." (Dkt. No. 1 at 2-3 of 4.) Plaintiff complains that although he "meet[s] all eligibilities to be moved to a minimum security work-camp," Defendants "refuse stating all medical yards are Level 2 and 3 maximum security." (Id. at 3.)

Plaintiff seeks monetary damages as well as injunctive relief. (Id.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any

2

such entity." 42 U.S.C. § 12132. The ADA applies to state prison inmates. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998). To establish a violation of the ADA, Plaintiff must demonstrate that (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit by reason of such disability. Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999) (citing Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995)). On the other hand, to establish a violation of the Rehabilitation Act, Plaintiff must prove that he: (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity that receives federal funds; and (3) was excluded from same due to discrimination solely on account of the disability. See 29 U.S.C. § 794(a); Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995).[1] Because the "language of [these] two statutes is substantially the same," generally the same analysis is applied to both. Doe, 50 F.3d at 1265 n.9 (citing 42 U.S.C. § 12133); see also Baird, 192 F.3d at 469-70 (noting the difference in the "causative link" standard between the RA and ADA).

In their Motion for Summary Judgment, Defendants do not dispute that diabetes qualifies under the ADA as a disability. (Dkt. No. 28-1 at 9.) They contend, however, that "Dunbar cannot show he was excluded from the work program because of his disability and that he was otherwise qualified for the program." (Id.) Defendants state,

> By his own admission, Dunbar had a Level 1B Security Criteria at the time he filed his Complaint in August of 2011. (Complaint, p.2.) This alone would not qualify him for the work program.

(Dkt. No. 28-1 at 10.) Defendants further explain that on May 5, 2011, Dunbar "was given permanent work restrictions of sedentary work only, no temperature extremes, no humidity

---

[1] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

3

extremes, no working at extreme heights and was assigned to twenty-four hour nursing coverage." (Id.) When Dunbar was re-evaluated by medical staff on August 17, 2011, the sedentary work restriction was removed. (Id.) On November 2, 2011, "re-evaluation changed him from twenty-four hour nursing coverage to daily nursing coverage." (Id.) However, "[e]ven this change would not be enough to allow Dunbar to participate in the work program as the institutions that had this coverage still did not include Level 1-A institutions." (Id.)

Plaintiff, in his Response in Opposition to the Motion for Summary Judgment, states that shortly after entering SCDC, he was placed at Kirkland Correctional Institution "and given a job as a painter with no work restriction, nor restriction of institutional assignments." (Dkt. No. 32 at 2 of 21.) He complains that, upon his move to Evans Correctional Institution in January of 2011, he was "labeled as having breathing problems," but after he saw the doctor at Evans, the work restriction was lifted (except Plaintiff was not to work around chemicals) because "it was plain" there were no problems with his breathing. (Dkt. No. 32 at 4 of 21.) After Plaintiff was diagnosed with diabetes on May 4, 2011, he "was given permanent work restriction of sedentary work only, no temperature extremes, no humidity extremes, no heights, and assigned to a twenty-four hour medical yard." (Id.) He describes, as did Defendants, how many of the restrictions were ultimately lifted. (Id.)

Plaintiff states that in January of 2012, while having a "custody level of MO1B," he was transferred to the level one yard at Manning Correctional Institution. (Dkt. No. 32 at 5 of 21.) Plaintiff alleges that he saw the doctor there on January 15, 2012, and all work restrictions were lifted. (Id.) Plaintiff states that he was then "re-classed and placed on the labor/work-crew." (Id.) Plaintiff complains that he "was discriminated [against] due to [his] disability, from all activities[] and programs [during his] entire stay at SCDC." (Id. at 6 of 21.)

4

The undersigned recommends granting summary judgment to Defendants. Pursuant to the ADA, "disability" is defined with respect to an individual as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). However, [a]n impairment cannot be demonstrated merely through evidence of a medical diagnosis . . . ." Falso v. Ablest Staffing Servs., 533 F. Supp. 2d 332, 336 (W.D.N.Y. 2008). As noted by the Fourth Circuit Court of Appeals, "[d]iabetes is not a per se disability under the ADA . . . ." Schneider v. Giant of Maryland, LLC, 389 Fed. App'x 263, 268 (4th Cir. 2010).

In the instant case, the only allegation of disability is that Plaintiff has diabetes. As noted above, however, diabetes is not a per se disability. And Plaintiff's complaints in the instant case also mitigate against a conclusion that he is disabled–he complains about the short-term medical restrictions placed on him that prevented him from working. Plaintiff claims, in essence, that his diabetes did not substantially limit his ability to work. Certainly Plaintiff still has diabetes. The work restrictions, however, were ultimately lifted, and Plaintiff was allowed to return to work approximately eight months after his diagnosis. (Dkt. No. 32 at 5 of 21.) It appears, then, that Plaintiff's diagnosis did *not* substantially limit his ability to work. See, e.g., Works v. Astrue, No. RBD 10-1284, 2011 WL 1197655, at *6 (D. Md. Mar. 29, 2011) (finding the plaintiff was not disabled pursuant to the ADA as a result of her diabetes because, *inter alia*, the plaintiff "admitted that her diabetes did not affect her work while employed" at the Social Security Administration).

The undersigned further recommends that Defendants' Motion for Summary Judgment be granted because Plaintiff failed to show that he was "otherwise qualified" for the benefit in question. Plaintiff was diagnosed with diabetes on May 4, 2011, upon being

5

sent out of Evans Correctional to Marlboro Park Hospital. (Dkt. No. 32 at 4 of 21.) It is worth noting, however, that Plaintiff had work restrictions *prior* to being diagnosed as diabetic. (See Dkt. No. 32 at 3 of 21; see also Dkt. No. 37-1 at 2 of 98 in previous case Dunbar v. SCDC Medical et al., No. 2:11-cv-1620-JFA.)[2] In fact, Plaintiff states in his Response in Opposition that the order to transfer him to an institution with a 24-hour nursing facility came down in January of 2011, (Dkt. No. 32 at 3 of 21), which was several months prior to his diagnosis. Furthermore, any contention that Plaintiff was "otherwise qualified" for full work detail, and that the reason Plaintiff was denied the benefit of working due to his diagnosis, is without merit, as Plaintiff was clearly not in good enough health to work immediately after his diagnosis. (See Dkt. No. 37-1 in previous case Dunbar v. SCDC Medical et al., No. 2:11-cv-1620-JFA.)

In any event, Plaintiff cannot show that he was "otherwise qualified" because, as Plaintiff himself admits, he had a custody level of 1B. (See Compl. at 2 of 4; see also Dkt. No. 32 at 5 of 21.) To qualify for the labor crew or work program, however, an inmate "must meet conditions set forth in the Security Criteria for 1A institutions." (Dkt. No. 28-6 at 8 of 9.) Because Plaintiff's custody level was 1B–and not the required 1A–Plaintiff cannot show that he was "otherwise qualified" for the benefit at issue. See, e.g., Bain v. Gorczyk, No. 1:07-CV-116, 2010 WL 1257646, at *12 (D. Vt. Feb. 19, 2010), adopted at 2010 WL 1257640 (D. Vt. Mar. 24, 2010).

Lastly, to the extent Plaintiff's Complaint may be read to include allegations of a constitutional violation, such a claim would fail. The Fourth Circuit has found that prisoners have no entitlement to a job; as such, Plaintiff is unable to show a constitutional violation.

---

[2]According to the Affidavit of Amy Smith, which was filed in Dunbar v. SCDC Medical, C/A No. 2:11-cv-1620-JFA, Dunbar's medical records reveal that he was requesting that medical work restrictions be removed from his classification profile on January 20, 2011. (Smith Aff. ¶ 9; see also Dkt. No. 37-1 at 34 of 98.)

6

See Altizer v. Paderick, 569 F.2d 812 (4th Cir.1978) (custody classifications and work assignments are generally within the discretion of the prison administrator); see also Hewitt v. Helms, 459 U.S. 460 (1983).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. No. 28) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 30, 2013
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

7

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).